267 N.J. Super. 520 (1993)
632 A.2d 277
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NOROBERTO BIELKIEWICZ, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JERMAINE PITTS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued and Submitted September 21, 1993.
Decided October 15, 1993.
*522 Before Judges MICHELS, SKILLMAN and KESTIN.
Carmine D. Campanile argued the cause for appellant Noroberto Bielkiewicz (Stanziale & Campanile, attorneys; David C. Stanziale, of counsel; Mr. Campanile, on the brief).
Zulima V. Farber, Public Defender, attorney for appellant Jermaine Pitts (Steven M. Gilson, Designated Counsel, of counsel and on the brief).
Hillary L. Brunell argued the cause for respondent in A-4438-91T2 (Clifford J. Minor, Essex County Prosecutor, attorney on both appeals; Ms. Brunell, of counsel and on the briefs).
Noroberto Bielkiewicz, appellant, submitted a supplemental brief pro se.
The opinion of the court was delivered by SKILLMAN, J.A.D.
*523 A jury found defendants Noroberto Bielkiewicz and Jermaine Pitts guilty in a joint trial of purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3a(1), (2); possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5b, and possession of a firearm with the purpose to use it unlawfully against the person of another, in violation of N.J.S.A. 2C:39-4a. The court sentenced defendants for murder to thirty year terms of imprisonment without eligibility for parole. The court merged defendants' convictions for possession of a firearm for an unlawful purpose into their convictions for murder. The court also sentenced defendants to concurrent four year terms of imprisonment for possession of a handgun without a permit.
Defendants filed separate appeals from their judgments of conviction, which we now consolidate.
On his appeal, Pitts argues:
I. THE TRIAL COURT'S PREJUDICIAL ACCOMPLICE LIABILITY CHARGE MANDATES THAT DEFENDANT'S MURDER CONVICTION BE REVERSED. (Not Raised Below).
II. THE TRIAL COURT'S PREJUDICIAL PASSION/PROVOCATION MANSLAUGHTER CHARGE MANDATES THAT DEFENDANT'S MURDER CONVICTION BE REVERSED. (Not Raised Below).
On his appeal, Bielkiewicz argues:
I. BERMUDEZ'S AND PEREZ'S IDENTIFICATION OF BIELKIEWICZ WERE IMPERMISSIBLY SUGGESTIVE AND RESULTED IN A SUBSTANTIAL LIKELIHOOD OF IRREPARABLE MISIDENTIFICATION AND AS SUCH, THE PRE-TRIAL AND IN-COURT IDENTIFICATIONS BY THOSE WITNESSES SHOULD HAVE BEEN EXCLUDED FROM EVIDENCE.
II. THE TRIAL COURTS DENIAL OF BIELKIEWICZ'S MOTION FOR JUDGMENT OF ACQUITTAL CONSTITUTES REVERSIBLE ERROR.
III. BIELKIEWICZ'S CONVICTION SHOULD BE VACATED AS THE TRIAL COURT'S INSTRUCTION TO THE JURY ON THE THEORY OF ACCOMPLICE LIABILITY DID NOT ENUNCIATE THE SHARED INTENT REQUIREMENT, NOR DID THE TRIAL COURT ADEQUATELY REPEAT THE CHARGE OF ACCOMPLICE LIABILITY IN THE CONTENT OF THE LESSER INCLUDED OFFENSES. (Not Raised Below).

*524 IV. BIELKIEWICZ'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED WHEN THE TRIAL COURT FAILED TO CHARGE THE JURY AS TO THE CAUSAL RELATIONSHIP BETWEEN DEFENDANT'S CONDUCT AND RESULT WITH RESPECT TO THE PURPOSEFUL OR KNOWING MURDER CHARGE AND THE FAILURE OF THE CHARGE TO RELATE THE CONFLICTING FACTUAL VERSION TO THE LEGAL ISSUES.
V. THE TRIAL COURT'S ERRONEOUS INSTRUCTIONS AS TO THE DEFINITIONS OF "PURPOSELY" AND "KNOWINGLY" WARRANT REVERSAL OF THE CONVICTIONS.
VI. BIELKIEWICZ'S CONVICTION OF PURPOSEFUL OR KNOWING MURDER WAS AGAINST THE WEIGHT OF THE EVIDENCE WARRANTING REVERSAL OF THE CONVICTION BY THIS COURT.
In addition, Bielkiewicz has filed a supplemental pro se brief which argues:
I. THE STATE'S USE OF THE CODEFENDANT'S STATEMENT TO OBTAIN AN INDICTMENT IN THIS CASE VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND AS SUCH, THE INDICTMENT MUST BE DISMISSED.
II. THE PROSECUTOR'S MISCONDUCT IN PRODUCING THE CODEFENDANT'S STATEMENT FOR JURY DELIBERATION AND VOTING DENIED THE DEFENDANT DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND AS SUCH, WARRANTS A DISMISSAL OF THE INDICTMENT.
III. THE UNTIMELY FILING OF THIS ISSUE PERTAINING TO THE GRAND JURY INDICTMENT CANNOT BE HELD AGAINST THE DEFENDANT AS IT WAS DONE WITHOUT HIS GIVING A WAIVER OR BEING AWARE OF HIS RIGHTS.
IV. THE EGREGIOUS SHORTCOMINGS OF COUNSEL ALLOWED THE STATE TO OBTAIN A CONVICTION IN VIOLATION OF DEFENDANT'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS TO THE CONSTITUTION.
V. TRIAL COUNSEL'S FAILURE TO FILE A MOTION FOR A SEVERANCE DEPRIVED THE DEFENDANT OF DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL.
VI. THE ACCUMULATION OF ERRORS AT TRIAL AND PRIOR TO TRIAL REQUIRES REVERSAL.
Except for Pitts' Point I and Bielkiewicz's Point III dealing with the trial court's jury instructions regarding accomplice liability, defendants' arguments are clearly without merit and do not require discussion. R. 2:11-3(e)(2). However, we conclude that the *525 trial court's instructions regarding accomplice liability for murder were inadequate. Therefore, we reverse defendants' murder convictions and remand for a new trial. The erroneous jury instructions regarding accomplice liability do not affect defendants' convictions for possession of a handgun without a permit and possession of a firearm with the purpose to use it unlawfully against the person of another. Consequently, we affirm those convictions.
Defendants' convictions arose out of an incident in the parking lot of a Burger King in Newark, which occurred around 11:00 p.m. on August 19, 1991. The victim, Miguel Gonzalez, and his cousin, Carlito Perez, were tow truck drivers for Steve's Towing, which had a contract with the Burger King to tow illegally parked vehicles from its parking lot. On the night of the killing, Gonzalez and Perez were in the driveway of the Burger King in separate tow trucks about to leave the premises when, according to Perez, Pitts walked up to Gonzalez's truck and started yelling. A short time later Gonzalez got out of his truck and a fight ensued. Gonzalez was getting the better of Pitts in the fight, at which point Bielkiewicz and another male came to Pitts' assistance. Perez then got out of his truck to help Gonzalez. As Perez approached, he saw Gonzalez run toward his truck and Pitts, armed with a small black gun, run after Gonzalez. Gonzalez opened the door of his truck, got in, and put the truck in gear as Pitts stuck his hand in the window. Perez then heard Pitts fire two shots at Gonzalez. After being shot, Gonzalez drove rapidly out of the Burger King driveway, with Perez following in his truck. Perez heard three additional shots being fired as they drove away, one of which apparently struck the rear of Gonzalez's vehicle. Perez was unable to see who fired the additional shots because he had his head down to avoid getting shot himself. Perez followed Gonzalez for about one half mile until the Gonzalez vehicle went up onto the sidewalk, banged into a fence, and came to a stop. Gonzalez was pronounced dead shortly thereafter.
In addition to Perez, there were two other witnesses to the shooting incident who testified at trial, Lloyd Brown, an assistant *526 manager of the Burger King, and Raphael Bermudez, a Newark policeman who was working as a security officer at the Burger King. Another Burger King employee told Brown and Bermudez that there was a fight in the parking lot, so they ran towards two glass doors facing the lot. Brown's description of the shooting was similar to Perez's, except that he indicated there were two shooters, one of whom chased Gonzalez back to his truck and fired at him at close range and the other of whom fired shots at the trucks as they were driving away. Brown was unable to identify either shooter. He also did not actually see a gun in the hand of the person who chased Gonzalez back to his truck, but he heard two "banging noises" while that person was standing next to the truck.
Bermudez's version of the incident was somewhat different than the one testified to by Perez and Brown. Although he began observing the scene around the same time as Brown, he did not observe a fight nor did he observe Pitts chase Gonzalez back to his truck. Rather, Bermudez testified that his initial observation was of Bielkiewicz pulling out a gun and firing a series of shots at the two tow trucks. Bermudez saw Pitts standing next to Bielkiewicz at this time but did not see any gun in his hand.
The State also presented evidence that a handgun discovered near the area where Bielkiewicz was apprehended was the source of the bullet which killed Gonzalez and that this gun had been fired only twice, which would support an inference that there were two guns involved in the incident.
The autopsy revealed that Gonzalez had been killed by a single gunshot wound to the chest. Consequently, the prosecution proceeded on the theory that the defendant who fired that shot, probably Pitts, was guilty of murder as a principal and that the other defendant was guilty as an accomplice. The prosecutor clearly articulated this theory in his opening:
Now, ladies and gentlemen, as I have told you, it was one bullet that killed Miguel Gonzalez. It wasn't two. It was one. So, only one of these guys actually pulled the fatal shot. I submit to you and you will see the proof that it was Jermaine Pitts who pulled the fatal shot because he reached into the cab like that *527 and that is where the bullet entered. However, because of the actions of Noroberto Bielkiewicz he is also charged with murder because he is an accomplice and the Judge will charge you specifically as to what an accomplice is.
During the course of the trial listen closely to what the witnesses say about Noroberto Bielkiewicz. Did he help Jermaine Pitts? Did he encourage Jermaine Pitts? Did he aid Jermaine Pitts? Did he aid and abet him? Listen closely, please, to when the witnesses talk about Noroberto Bielkiewicz in judging his culpability.
The prosecutor returned to this theory in his summation, stating:
The Judge is going to charge you as to an accomplice. Accomplice means that the guy that did not fire the fatal shot is no less guilty than the guy who did it.[1]
Thus, the trial court had an obligation to provide the jury with accurate and understandable instructions regarding accomplice liability for murder.
"Accurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial." State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988). Consequently, a trial court's failure to charge the jury on an element of an offense is presumed to be prejudicial error, even in the absence of a request by defense counsel. State v. Federico, 103 N.J. 169, 176, 510 A.2d 1147 (1986). "So paramount is the duty to insure a fair trial that a jury must deliberate in accordance with correct instructions even when such instructions are not requested by counsel." State v. Grunow, 102 N.J. 133, 148, 506 A.2d 708 (1986); see also State v. Rhett, 127 N.J. 3, 5-8, 601 A.2d 689 (1992); State v. Martin, 119 N.J. 2, 15-18, 573 A.2d 1359 (1990). Therefore, when a prosecution is based on the theory that a defendant acted as an accomplice, the court is obligated to provide the jury with accurate and understandable jury instructions regarding accomplice liability even without a request by defense counsel. State v. Weeks, 107 N.J. 396, 410, 526 A.2d 1077 (1987).
"By definition an accomplice must be a person who acts with the purpose of promoting or facilitating the commission of the *528 substantive offense for which he is charged as an accomplice." State v. White, 98 N.J. 122, 129, 484 A.2d 691 (1984). Therefore, a jury must be instructed that to find a defendant guilty of a crime under a theory of accomplice liability, it must find that he "shared in the intent which is the crime's basic element, and at least indirectly participated in the commission of the criminal act." State v. Fair, 45 N.J. 77, 95, 211 A.2d 359 (1965).
In addition, when an alleged accomplice is charged with a different degree offense than the principal or lesser included offenses are submitted to the jury, the court has an obligation to "carefully impart[] to the jury the distinctions between the specific intent required for the grades of the offense." State v. Weeks, supra, 107 N.J. at 410, 526 A.2d 1077. The Court made essentially the same point in State v. Fair, supra, 45 N.J. at 95, 211 A.2d 359:
If both parties enter into the commission of a crime with the same intent and purpose each is guilty to the same degree; but each may participate in the criminal act with a different intent. Each defendant may thus be guilty of a higher or lower degree of crime than the other, the degree of guilt depending entirely upon his own actions, intent and state of mind.
And speaking with reference to a deadly assault committed by more than one person, Chief Justice Weintraub explained in State v. Madden, 61 N.J. 377, 391, 294 A.2d 609 (1972):
[I]f several participate in an attack and death results, the degree of the offense as to each may turn upon his own acts and purpose. Thus if two should attack and one of them intends only a simple assault and battery and is unaware of the intent of the other to use deadly force, he would be culpable only according to his own intent and wrong. But if he participates in an attack or continues in it with an awareness of the purpose of others to kill or to do grievous bodily harm, he is chargeable with that further intent and result.

[Citations omitted.]
See also State v. Thomas, 76 N.J. 344, 355-57, 387 A.2d 1187 (1978); State v. Dissicini, 126 N.J. Super. 565, 570, 316 A.2d 12 (App.Div. 1974), aff'd o.b., 66 N.J. 411, 331 A.2d 618 (1975).
We recently discussed these principles with specific reference to murder and the lesser included offenses of aggravated manslaughter *529 and manslaughter, for which the "intent" element is "recklessness":

Weeks holds that in order to convict a defendant as an accomplice to a crime, the jury must "find that the defendant had the purpose to participate in the crime [as] defined in the Code...." 107 N.J. at 403, 526 A.2d 1077. [Emphasis added] He must have had the "conscious object or design of facilitating" that crime. Id., at 404, 526 A.2d 1077.
What then of vicarious liability for a crime whose culpability requirement is not knowing or purposeful action but rather reckless action? If vicarious liability requires the purpose that the crime be committed, but if the crime does not have a purposeful element, can there be vicarious liability at all? The apparent conundrum is how one can intend a reckless act. We are, however, satisfied that that conundrum is semantical rather than substantive.
....
... [I]mposition of vicarious liability for a crime whose culpability requirement is recklessness requires an initial focus on the actor's conduct rather than on the crime itself. As a first condition, the accomplice ... must have intended that the actor's conduct take place, i.e., that the accomplice ... had the purpose of promoting or facilitating the commission of that conduct by the actor and took some step or steps, as stipulated by either N.J.S.A. 2C:2-6b(3) or 2C:5-2 as applicable, in order actually to promote or facilitate that conduct....
If the actor is liable for a "reckless" crime, vicarious liability for that crime or a lesser-included "reckless" crime may attach to an accomplice ... who purposely promoted or facilitated the actor's conduct; who was aware when he did so, considering the circumstances then known to him, that the criminal result was a substantial and [un]justifiable risk of that conduct; and who nevertheless promoted that conduct in conscious disregard of that risk. If the actor is liable for an "intent" crime, vicarious liability for that crime may only attach to an accomplice ... who shared the intent that that crime be committed. Vicarious liability for a "reckless" crime may also, however, attach when the actor commits an "intent" crime and the accomplice ... did not intend that that crime be committed but nevertheless intended that the actor take a specific action or actions which resulted in the crime. If criminal liability for the criminal result of that conduct can be predicated on a reckless state of mind, an accomplice ... can be vicariously liable for that "reckless" crime under the same principles which apply where the actor's culpability is also based on recklessness. This is so even if the actor himself is guilty of an "intent" crime. The point, as stated by Fair, supra, is that each participant in a common plan may participate therein with a different state of mind. The liability of each participant for any ensuing crime is dependent on his own state of mind, not on anyone else's.
[State v. Bridges, 254 N.J. Super. 541, 562-66, 604 A.2d 131 (App.Div. 1992).]
Although the Supreme Court disagreed with our conclusion that the liability of an alleged co-conspirator is governed by these same principles, State v. Bridges, 133 N.J. 447, 628 A.2d 270 (1993), it *530 did not disagree with our discussion of accomplice liability as applied to murder and the lesser included offenses of aggravated manslaughter and manslaughter. Indeed, the Court stated that the standard which governs conspirator liability "is less strict than that defining accomplice accountability." Id., at 466, 628 A.2d 270. Moreover, our discussion of accomplice liability as applied to murder and its lesser included offenses in Bridges simply expanded upon the principles previously discussed by the Court in Weeks, Fair, and Madden. See also Final Report of the New Jersey Criminal Law Revision Commission, Vol. II, at 63 (1971); Model Penal Code § 2.06 cmts. 6(a) & 7 (1985).
The trial court's instructions to the jury regarding accomplice liability for murder did not convey an accurate and complete understanding of these principles. The court instructed the jury:
Ladies and gentlemen, if you find one defendant guilty of a purposeful or knowing murder and also find he did not act in the heat of passion resulting from a reasonable provocation, then you must determine whether the other defendant is or is not guilty of the same offense by reason of complicity or aiding and abetting. The law of complicity reads as follows:
"A person is guilty as an accomplice of another person in the commission of an offense if with the purpose of promoting or facilitating the commission of the offense he aids or agrees or attempts to aid such other person in planning or committing it."
This provision means that not only is the person who actually commits the criminal act responsible for it but those who are accomplices are also responsible.
The word aid as contained in the statute means to assist, support or supplement the efforts of another.
If you find that the defendant willfully and knowingly aided another in the commission of the offense, you must consider him a principal. Aiding does not have to be proven by direct evidence of a formal plan to commit a crime which is verbally agreed to by all that are charged. The proof may be circumstantial. Participation and agreement can be established from conduct as well as spoken words.
An accomplice has committed the same crime of purposeful or knowing murder only if the accomplice had the purpose to promote or facilitate the crime of purposeful or knowing murder as I have defined those terms for you.
However, one cannot be held as an accomplice unless you find as a fact that he shared the same purpose required to be proven against the person who actually committed the act.

*531 A person acts purposely with respect to the nature of his conduct or the result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. In other words, in order for you to find that the defendant acted purposely, the State must prove beyond a reasonable doubt that it was the defendant's conscious design to promote or facilitate the commission of the offense.
Mere presence at or near the scene of a crime does not make one a participant in the crime, nor does the failure of a spectator to interfere make him a participant in the crime. It is, however, a circumstance to be considered with the other evidence in determining whether he was present as an accomplice. Presence is not in itself conclusive evidence of that fact. Whether presence has any probative value depends upon the total circumstances. To constitute guilt there must exist a community of purpose and actual participation in the crime committed.
While mere presence at the scene of the perpetration of a crime does not render a person a participant in it proof that one is present at the scene of the commission of the crime, without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is possible for the jury to infer that he assented thereto, lent to it his countenance and approval and was thereby aiding the same. It depends upon the totality of the circumstances as those circumstances appear from the evidence.
Thus, while the court properly instructed the jury that a defendant must have "the purpose to promote or facilitate the crime of purposeful or knowing murder" to be found guilty of murder as an accomplice, it did not inform the jury that a defendant could be found guilty as an accomplice of aggravated manslaughter, manslaughter or assault. In fact, the court did not even mention accomplice liability in instructing the jury with respect to these lesser included offenses. The court also did not inform the jury that it could find one defendant guilty of murder as a principal and the other defendant guilty of aggravated manslaughter, manslaughter or assault as an accomplice. Indeed, the court implied the contrary when it told the jury that "one cannot be held as an accomplice unless you find as a fact that he shared the same purpose required to be proven against the person who actually committed the act."[2]
*532 During its deliberations, the jury asked a question regarding this aspect of the instructions: "Do you have to convict an accomplice with the same charge as the person who assumingly killed the victim?" In response, the court stated:
I want to remind you that the first thing you have to remember is each defendant must be considered individually and separately. You are aware of that.
The immediate answer to your question I would say is no.
You should also remember that the complicity charge or accomplice charge only applies in this case to the charge of purposeful or knowing murder.
If you find that one defendant committed a purposeful or knowing murder and did not act in the heat of passion resulting from a reasonable provocation, then you will have to determine if the other defendant is or is not guilty of the same offense. But, again, you do not have to find each defendant guilty of the same offense.
*533 Shortly thereafter, the jury asked the court, "Can we rehear the law regarding what defines an accomplice?" In response, the court reinstructed the jury with respect to accomplice liability in the same language as in its original instruction.
Thus, although the court responded negatively to the jury's question, "do you have to convict an accomplice with the same charge as the person who assumingly killed the victim?", which could be reasonably understood to say that the principal could be convicted of murder and the accomplice of a lesser offense, the court also told the jury that "the complicity charge or accomplice charge only applies in this case to the charge of purposeful or knowing murder," which would seem to indicate that defendant could not be found guilty as an accomplice of aggravated manslaughter, manslaughter or assault. This understanding of the court's instructions was reinforced by the court repeating shortly thereafter that "one cannot be held as an accomplice unless you find as a fact that he shared the same purpose required to be proved against the person who actually committed the act."
Moreover, even if the court's supplemental instructions could have been understood to say that the jury could find the principal guilty of murder and the accomplice guilty of a lesser offense, the court never told the jury what view of the facts could lead to this conclusion. The court did not inform the jury that it could conclude, in accordance with Bridges, that even though the principal had committed purposeful or knowing murder, the accomplice could be found guilty of a lesser offense involving recklessness if he intended that an assault be committed upon Gonzalez but did not share the principal's intent that that assault cause death or serious bodily injury. State v. Bridges, supra, 254 N.J. Super. at 566, 604 A.2d 131; see also State v. Fair, supra, 45 N.J. at 94-96, 211 A.2d 359; State v. Dissicini, supra, 126 N.J. Super. at 570, 316 A.2d 12. In that event, it would have been appropriate to convict the accomplice of aggravated manslaughter if there was a probability of death resulting from the assault he intended to commit or manslaughter if there was a possibility of *534 death. State v. Bowens, 108 N.J. 622, 638, 532 A.2d 215 (1987); State v. Curtis, 195 N.J. Super. 354, 364, 479 A.2d 425 (App.Div.), certif. denied, 99 N.J. 212, 491 A.2d 708 (1984).
The prosecutor acknowledges that the trial court's instructions "unnecessarily limited the jury's options," but argues that the deficiency could only have benefitted the defendants and thus was harmless because it conveyed the impression that the jury could return a guilty verdict on a theory of accomplice liability only if it first found the principal guilty of murder. However, as previously discussed, the court's instructions also conveyed the impression that the jury could not convict the principal of murder and the accomplice of a lesser included offense. The court also failed to tell the jury that if it found the accomplice had the purpose to promote or facilitate an assault upon the victim, but did not share the principal's purpose to cause death or serious bodily injury, he should be acquitted of murder but could be found guilty of aggravated manslaughter, manslaughter, or assault. Consequently, the court's instructions could have given the jury the impression that if they found the principal guilty of murder they would be required either to acquit or also to convict the alleged accomplice of murder.
In describing the prejudice to a defendant resulting from a trial court's failure to submit a lesser included offense to the jury, our Supreme Court has stated:
[A] jury reluctant to acquit defendant might compromise on a verdict of guilt on the greater offense. "Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." Keeble v. United States, 412 U.S. 205, 212-13, 93 S.Ct. 1993, 1997-98, 36 L.Ed.2d 844, 850 (1973).
[State v. Sloane, 111 N.J. 293, 299, 544 A.2d 826 (1988).]
See also State v. Sinclair, 49 N.J. 525, 540-43, 231 A.2d 565 (1967). If a trial court submits lesser included offenses to the jury but fails to give accurate and complete instructions regarding accomplice liability for these lesser offenses, there is a similar risk that the jury will compromise on a guilty verdict for the greater offense.
*535 It follows from this analysis that Bielkiewicz's conviction for murder must be reversed. The autopsy indicated that the victim was killed by a single gunshot wound. The State's evidence strongly indicated that Pitts was the one who fired the shot. Consequently, the State's basic theory, as articulated in the prosecutor's opening statement, was that Bielkiewicz was guilty of murder as an accomplice. The jury could have concluded, if adequately instructed, that Bielkiewicz had the purpose to aid Pitts in assaulting Gonzalez but not the purpose to cause death or serious bodily injury. The evidence indicates that the assault was not planned in advance but occurred spontaneously after Pitts directed some form of verbal insult at Gonzalez. Moreover, Bielkiewicz did not become a participant in the fight until after Gonzalez seemed to be getting the better of Pitts. Under these circumstances, the jury could very well have found that Bielkiewicz had the intent to cause bodily injury but not death or serious bodily injury to Gonzalez. Indeed, even if the jury found that there was a second gun which Bielkiewicz fired at the rear of the tow trucks as they fled the scene, it could have found that his intent was not to hit one of the drivers, but rather to intimidate them or to impress Pitts. Furthermore, the jury's questions to the court suggested that it was considering finding the accomplice, presumably Bielkiewicz, guilty of a lesser degree offense than the principal. Therefore, the court's accomplice liability instructions had a clear capacity of producing an unjust result as to Bielkiewicz and thus require a reversal of his conviction even though defense counsel did not object. See State v. Weeks, supra, 107 N.J. at 410, 526 A.2d 1077.
Whether Pitts' conviction must also be reversed presents a closer question. The State's theory was that Pitts had fired the fatal shot and thus was the principal. This theory was strongly supported by Perez's and Brown's testimony that Pitts fired two shots at Gonzalez from close range. However, if the jury rejected this testimony and accepted Bermudez's testimony that only Bielkiewicz had a gun, it could have found that Bielkiewicz fired the fatal shot and thus was the principal. Although the weight of the *536 evidence supports a finding that Pitts fired the fatal shot, we are reluctant to speculate about the unexpressed findings underlying a jury verdict. Also, we are reluctant to conclude that erroneous jury instructions, applicable to both defendants in a joint trial, were prejudicial as to one but harmless as to the other. Therefore, we are constrained to reverse Pitts' conviction for murder.
However, the erroneous jury instructions regarding accomplice liability for murder do not require a reversal of defendants' convictions for possession of a handgun without a permit and possession of a firearm with the purpose to use it unlawfully against the person of another. The court's accomplice liability instructions were limited to the charge of murder. The court gave standard instructions to the jury regarding the weapons offenses, including instructions on "constructive" and "joint" possession, see State v. McCoy, 116 N.J. 293, 299-300, 561 A.2d 582 (1989); State v. Latimore, 197 N.J. Super. 197, 210, 484 A.2d 702 (App.Div. 1984), certif. denied, 101 N.J. 328, 501 A.2d 978 (1985), which defendants do not challenge. We perceive no basis for concluding that the court's erroneous instructions regarding accomplice liability for murder could have affected the jury's understanding of the elements of the weapons offenses. See State v. Rhett, supra, 127 N.J. at 8-9, 601 A.2d 689.
Accordingly, we reverse defendants' convictions for murder and remand for a new trial on that charge. We affirm defendants' convictions for possession of a handgun without a permit and possession of a firearm with the purpose to use it unlawfully against the person of another.
NOTES
[1] Insofar as the prosecutor's summation suggested that an accomplice must necessarily be guilty of the same degree offense as the principal, it constituted an incorrect statement of law for reasons discussed at length later in this opinion.
[2] The trial court's instructions were drawn from the Model Criminal Jury Charges relating to accomplice liability. New Jersey Model Jury Charges, Criminal, Complicity, N.J.S.A. 2C:2-6 (approved October 17, 1988). However, the model charges do not adequately explain that the jury may find an accomplice guilty of a different degree offense than the principal if the accomplice has a different intent. The model charges contain a single oblique reference to the jury's authority to return such a verdict:

An accomplice may be convicted on proof of the commission of a crime or of (his/her) complicity therein, though the person who it is claimed committed the crime has not been prosecuted or convicted or has been convicted of a different offense or degree of offenses or has an immunity from prosecution or conviction or has been acquitted. [Id. at 8 (emphasis added).]
Although this part of the model charges, which the trial court did not use in preparing its instructions in this case, indicates that the jury may find an accomplice guilty of a different offense or degree of offense than the principal, nothing in the model charges explains the kind of jury findings which may warrant such a verdict. Specifically, the model charges do not inform the jury that an accomplice who has a different intent than the principal may be found guilty of a different degree offense. Moreover, other parts of the model charges, which were used by the trial court, seem to indicate that accomplice liability must be predicated upon a finding that the accomplice had the same intent as the principal:
However, one cannot be held to be an accomplice unless you find that (he/she) possessed the same criminal state of mind that is required to be proved against the person who actually committed the criminal act. [Id. at 9.]
Although the model charges refer in a footnote to the Weeks holding that "[a]n accomplice [to an armed robbery] may be convicted of a second degree robbery if the state proves his purpose was to share in his accomplice's purpose to rob, but not of first degree robbery unless the state establishes his additional purpose was that the codefendant use a deadly weapon," id. at 9 n. 12, they do not include any suggested language to explain this concept to the jury. Therefore, we suggest that the model criminal jury charges relating to accomplice liability be revised to address the principles set forth in Fair, Madden, Weeks and Bridges.