686 A.2d 348

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DUDLEY RUE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 17, 1996—Decided November 21, 1996.

Before Judges LONG, SKILLMAN and A.A. RODRIGUEZ.

*Robert L. Sloan,* Assistant Deputy Public Defender argued the cause for appellant (*Susan L. Reisner,* Public Defender, attorney; *Mr. Sloan,* of counsel and on the brief).

*Lisa Sarnoff Gochman,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Ms. Gochman,* of counsel and on the brief).

The opinion of the court was delivered by

LONG, P.J.A.D.

Defendant, Dudley Rue was charged in Mercer County Indictment, 92–07–0827–I, along with codefendants Rory Bryson, Robert Dodson, Robert Williams, and Tyrone Williams with first degree murder in violation of *N.J.S.A.* 2C:11–3(a)(1), (2) and *N.J.S.A.* 2C:2–6 (count one); second degree possession of a weapon for an unlawful purpose in violation of *N.J.S.A.* 2C:39–4(a) and *N.J.S.A.*

2C:2-6 (count two); third degree unlawful possession of a weapon without a permit in violation of *N.J.S.A.* 2C:39-5(b) (count three); and third degree possession of cocaine in violation of *N.J.S.A.* 2C:35-10(a)(1) and *N.J.S.A.* 2C:2-6 (count four).

Defendant was tried alone[1] and convicted of counts one, two and three. The jury acquitted defendant on the drug possession charge. After merging the conviction for the offense of possession of a weapon for an unlawful purpose into the murder conviction, defendant was sentenced on the murder conviction to a custodial term of 30 years with no parole eligibility. On the weapons permit conviction, defendant was sentenced to a concurrent custodial term of four years. An appropriate Violent Crimes Compensation Board (VCCB) penalty was also imposed.

Defendant appeals, contending that the following errors warrant reversal:

POINT I:

THE JUDGE'S FAILURE TO INSTRUCT THE JURORS THAT DEFENDANT COULD HAVE BEEN FOUND GUILTY, AS AN ACCOMPLICE, ONLY OF AGGRAVATED MANSLAUGHTER OR MANSLAUGHTER, ON THE BASIS OF HIS OWN RECKLESS MENTAL STATE, EVEN IF OTHERS INVOLVED HAD THE MENTAL STATE FOR MURDER, DEPRIVED DEFENDANT OF THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. *U.S. CONST.*AMENDS. V, VI, XIV; *N.J. CONST.* (1947) ART. I, PARS. 1, 9, 10. (Not Raised Below).

POINT II:

---

[1] Co-defendant, Rory Bryson, was convicted of being an accomplice to first degree purposeful or knowing murder and for unlawful possession of a handgun without a permit. He was sentenced to a life term with thirty-years of parole ineligibility on the murder and to a concurrent five-year custodial term on the weapons offense. We upheld his conviction and sentence. *State v. Rory Keith Bryson*, A-5887-92T4, decided January 13, 1995. Bryson's petition for certification to the Supreme Court was denied on March 14, 1995. *State v. Bryson*, 140 *N.J.* 277, 658 A.2d 300 (1995). Co-defendant, Robert Dodson, pleaded guilty to aggravated manslaughter and was sentenced to serve an aggregate term of 30 years with a 15 year mandatory minimum. Co-defendant, Robert Williams, also pleaded guilty to aggravated manslaughter and was sentenced to serve an aggregate term of 25 years with a 12 and 1/2 year mandatory minimum. The disposition of co-defendant, Tyrone Williams, is unknown.

IN A CASE WHERE THE VICTIM WAS NOT SHOT WITH A GUN BUT BEATEN TO DEATH, AN INSTRUCTION ALLOWING THE JURORS TO INFER THE MENTAL STATE FOR MURDER FROM THE USE OF A DEADLY WEAPON WAS UNFAIR, CONFUSING, AND OPERATED TO SHIFT THE BURDEN OF PROOF TO THE DEFENDANT, IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. *U.S. CONST.*AMENDS. V, VI, XIV; *N.J. CONST.* (1947) ART. I, PARS. 1, 9, 10.

In a supplemental pro se brief, defendant also urges:

*POINT I:*

DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF THE COMPULSORY PROCESS FOR PRODUCING A WITNESS IN HIS FAVOR IN VIOLATION OF THE CONSTITUTIONS OF NEW JERSEY AND THE UNITED STATES.

*POINT II:*

DEFENDANT WAS DENIED HIS RIGHT OF A SPEEDY TRIAL AFTER BEING GRANTED A SPEEDY TRIAL DAY CERTAIN, WHEREFORE THE CONVICTION MUST BE REVERSED AND THE INDICTMENT MUST BE DISMISSED.

*POINT III:*

THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE, WHEREFORE IT MUST BE VACATED AND A JUDGMENT OF ACQUIT-TAL MUST BE ENTERED AS TO COUNT ONE.

*POINT IV:*

THE TRIAL COURT GAVE A FAULTY JURY INSTRUCTION UNDER THE THEORY OF ACCOMPLICE LIABILITY BY FAILING TO CHARGE THE LESSER INCLUDED OFFENSES UNDER THIS THEORY.

We have carefully reviewed this record in light of these contentions and have concluded that our intervention is unwarranted. The issues raised in Point II of defendant's main brief and in Points I, II and III of defendant's supplemental pro se brief are entirely without merit and do not warrant discussion in a written opinion. *R.* 2:11–3(e)(2).

The issues raised in Point I of defendant's brief and in Point IV of his supplemental pro se brief are the same: that the trial judge gave a faulty jury instruction on accomplice liability which violated the principles established in *State v. Bielkiewicz,* 267 *N.J.Super.* 520, 632 *A.*2d 277 (App.Div.1993), thus requiring reversal. This issue requires some discussion.

The relevant facts of the case are essentially as follows: The State presented evidence that the murder arose out of an alterca-

tion between Robert Lee Dodson, a/k/a "Silk," and the victim, Jeffrey Glanton, a/k/a "Newark," on East Hanover Street in Trenton. Shinnette Williams, Harriette Stephens and Terrence Darnell Williams witnessed this event. Dodson apparently thought that Glanton stole drugs and money from Dodson's girlfriend. Dodson struck Glanton with an aluminum baseball bat. Glanton grabbed the bat as it slipped out of Dodson's hands and then hit Dodson in the leg with it. Dodson limped around the corner and placed a call from a pay phone and asked Terrence Williams to call "Bones" (Tyrone Williams) and tell him to "get over here" because he and Glanton were fighting. Tyrone Williams said he would be over in ten minutes.

Tyrone Williams soon appeared carrying a blue bag and asked where Glanton was. Stephens then pointed him in Glanton's direction, at which time Tyrone Williams walked up to Glanton and hit him with his fist. At this point, a blue Hyundai drove up and the occupants, four black men, jumped out at the same time and ambushed Glanton. These men, each armed with handguns, used the guns to beat Glanton. One of the assailants was identified as defendant. Witnesses said Glanton was essentially defenseless and that his head was split "wide open" and was "pulsating" with blood "bubbling" at the top "like his head was about to explode." During the beating, one of the hand guns discharged, apparently accidentally. This, in turn, caught the attention of Trenton Police Officers Maldonado and Medina who were on routine patrol. The assailants continued to beat Glanton until they saw the police car. The assailants then scattered in different directions.

Defendant and Rory Bryson walked "very quickly" toward the unoccupied blue Hyundai. Both "appeared to be very nervous." Defendant had a gun in his left hand which was pointed at the ground. Officer Maldonado informed his partner that defendant was armed and both officers alighted from their car. Officer Maldonado grabbed Bryson before he could enter the Hyundai. Bryson was in possession of an operable, unloaded Smith &

Wesson .357 Magnum. Defendant opened the passenger side door of the Hyundai, tossed a gun (a .38 caliber Smith & Wesson) inside, and fled with Officer Medina in pursuit. Officer Medina caught defendant and arrested him.

Glanton died after surgery at Saint Francis Medical Center. The autopsy disclosed that the cause of death was "extensive fractures of the skull, lacerations of the brain due to blunt trauma to the head." The injuries to the skull included severed fractures at the top as well as a "gaping hole" and a "deep scalp laceration" at the base of the skull. In the opinion of the medical examiner, such injuries would have required "innumerable blows" of "massive force." A forensic examination disclosed human blood on the gun which defendant discarded.

Defendant testified that he met with Bryson, Tyrone Williams, and Robert Williams to discuss a report that Dodson had been in a fight. They decided to investigate the matter and "scare the guy up." When Tyrone Williams left his mother's house, he brought a blue bag to the car that Bryson was driving. Just before stopping at East State Street to pick up Dodson, Tyrone Williams handed out guns from the blue bag, commenting on whether or not each gun was loaded. He then handed one to defendant, telling him to give it to Dodson, who was about to get into the back seat with defendant.

According to defendant, while Tyrone Williams walked to East Hanover Street, the others proceeded there in the car. Dodson directed Tyrone Williams to Glanton, who was standing in the street. Because defendant recognized Glanton as someone he had known since childhood and regarded him as his "uncle," defendant told the others that they were "related" and that they should not "mess with him."

Defendant claimed that he remained in the back seat of the Hyundai, when the others got out. The initial altercation was between Tyrone Williams and Glanton. The others soon joined the fight, striking Glanton on the head and shoulders with the guns. Dodson's gun discharged. When the police arrived, Bryson

and Tyrone Williams ran back to the Hyundai, threw their guns inside, and told defendant to run. Defendant states that he ran to East State Street and was arrested outside of Dodson's apartment.

Defendant testified that until he recognized Glanton, his only intention was "to scare the guy up." Prior to the attack on Glanton, defendant stated that he was unaware of anyone else's intention to kill or injure Glanton.

■ Defendant now argues for the first time that the accomplice charge given by the judge was erroneous. In light of his failure to object to the instruction, any error in it should be disregarded by us unless it was clearly capable of producing an unjust result. *R.* 2:10–2. *State v. Cofield*, 127 *N.J.* 328, 341, 605 *A.*2d 230 (1992).

■ The State concedes that the jury was "not specifically instructed that in a homicide prosecution, even though the principal had committed purposeful or knowing murder, the accomplice [can] be found guilty of a lesser offense involving recklessness (i.e., aggravated or reckless manslaughter) if he intended that an assault be committed upon the victim but did not share the principal's intent that the assault cause death or serious bodily injury." It is thus unnecessary to set forth the trial judge's instruction in detail. It falls to us to determine whether, on the facts of the case, the trial judge's omission could have led the jury astray. We think not.

Defendant's argument is based on *State v. Bielkiewicz, supra.* In that case, the victim, a tow truck driver was removing unauthorized cars from a restaurant parking lot. As a result, an altercation with Jermaine Pitts ensued. The victim was winning the fight when Bielkiewicz and another person came to Pitts' assistance. The victim ran and Pitts shot him in the back. We held, that on those facts, it was plain error not to explain to the jury that:

[I]t could find one defendant guilty of murder as a principal and the other defendant guilty of aggravated manslaughter, manslaughter or assault as an accomplice. Indeed, the court implied the contrary when it told the jury that "one cannot be held as an accomplice unless you find as a fact that he shared the same purpose required to be proven against the person who actually committed the act."

[*Bielkiewicz, supra*, 267 *N.J.Super.* at 531, 632 *A.*2d 277 (footnote omitted).]

In *Bielkiewicz*, the jury, as here, had questions regarding accomplice liability. The judge in *Bielkiewicz*, like this judge, gave a supplemental instruction in response to the jury's question. However, both the instruction in *Bielkiewicz* and in this case omitted telling the jury that it could find the principal guilty of murder and the accomplice guilty of a lesser offense. *Id.* at 533, 632 *A.*2d 277. We held:

The court did not inform the jury that it could conclude, in accordance with *Bridges*, that even though the principal had committed purposeful or knowing murder, the accomplice could be found guilty of a lesser offense involving recklessness if he intended that an assault be committed upon [the victim] but did not share the principal's intent that that assault cause death or serious bodily injury. [*Id.* at 533, 632 *A.*2d 277 (citations omitted).]

The difference between this case and *Bielkiewicz* is that the evidence in that case could have supported a finding that defendant Bielkiewicz did not share Pitts' homicidal state of mind. A jury could reasonably have concluded from his actions that Bielkiewicz was intent on inflicting bodily injury on the victim to help Pitts win the fight, but that he did not share Pitts' intent to cause death or serious bodily injury. That is not the case here. The parties presented the jury with two scenarios. The first was the state's version that defendant himself participated in the vicious beating of the victim which caused the death. The second was that defendant remained in the car and did not participate at all in the crime. Neither of those versions warranted a *Bielkiewicz* charge, the former because defendant's culpability was as a principal; the latter because defendant was not guilty of a crime at all.

Defense counsel suggests that the jury could have pieced together a third scenario and that that scenario compelled a *Bielkiewicz* instruction. The defense posits that a jury could conclude that defendant participated in the beating with the intention to "scare the victim up" and not to kill him, based on defendant's statement (albeit out of context) to that effect. The problem with

this suggestion is two fold: first there is absolutely no evidence whatsoever from which a jury, once having identified defendant as an actual participant in the beating of Glanton, could differentiate between his culpability and that of the other perpetrators of this crime. For example, defendant was not hitting the victim with his fists while the others were using steel weapons, nor was he hanging back while the others were enthusiastically striking the victim with their guns. He did what they did.

Second, and more important, a defendant's state of mind at the inception of a criminal act is subject to change. Thus, even if defendant began beating Glanton with the intention of scaring him, his continued striking of Glanton's skull, which was split open and pulsating with blood therefore evidencing catastrophic injury, revealed nothing less than an intention to cause him serious bodily injury or death. In short, on the evidence presented, once having rejected defendant's claim of non-complicity, that jury could not have concluded that defendant had the mental state for a lesser crime than that of the other participants. As such, the trial judge's instruction was not erroneous under *Bielkiewicz.*

Affirmed.