698 A.2d 821

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
DEMOTTE WILLIAMS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 5, 1997—Decided March 11, 1997.

Before Judges LONG, SKILLMAN and A.A. RODRÍGUEZ.

*Stephen W. Kirsch,* Assistant Deputy Public Defender, argued the cause for appellant (*Susan L. Reisner,* Public Defender, attorney; *Mr. Kirsch,* of counsel and on the brief).

*Jane Deaterly Plaisted,* Assistant Prosecutor, argued the cause for respondent (*Clifford J. Minor,* Essex County Prosecutor, attorney; *Ms. Plaisted,* of counsel and on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The primary issue presented by this appeal is whether an accomplice may be found guilty of purposeful or knowing murder even though his purpose was to cause serious bodily injury, rather than death, to the victim. This appeal also requires us to decide whether a trial court's failure to properly instruct the jury regarding the mental state required to find a defendant guilty as an accomplice is harmless error if the defendant is acquitted of purposeful or knowing murder but found guilty of the lesser included offense of aggravated manslaughter.

Defendant and codefendants Marvin Widemond and Kelvin Martin were indicted for conspiracy to commit murder, in violation of *N.J.S.A.* 2C:5–2, purposeful or knowing murder, in violation of *N.J.S.A.* 2C:11–3a(1)(2), possession of a handgun without a permit, in violation of *N.J.S.A.* 2C:39–5b, and possession of a weapon for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4a. In a joint trial, defendant and Widemond [1] were both acquitted of purposeful or knowing murder but convicted of the lesser included offense of aggravated manslaughter and the remaining charges.

The court sentenced defendant to a twenty-five year term of imprisonment, with eight-and-a-third years of parole ineligibility, for aggravated manslaughter.[2] The court merged defendant's

[1] Martin was tried separately.

[2] The judgment of conviction incorrectly indicates that defendant was sentenced to a twenty-five year term, with eight-and-a-third years of parole ineligi-

convictions for conspiracy to commit murder and possession of a weapon for an unlawful purpose into his conviction for aggravated manslaughter. The court also imposed a concurrent five year term of imprisonment for possession of a handgun without a permit.

On appeal, defendant makes the following arguments: [3]

I. THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT DEFENDANT OF MURDER OR CONSPIRACY TO COMMIT MURDER.
 A. Conspiracy to Murder.
 B. Murder.

II. THE INSTRUCTIONS ON ACCOMPLICE LIABILITY FAILED TO COMPLY WITH THE HOLDING OF *STATE v. BIELKIEWICZ.*

III. THE JURY INSTRUCTION ON ACCOMPLICE LIABILITY WAS CONFUSING AND COULD HAVE LED THE JURY TO BELIEVE THAT LESS THAN A PURPOSEFUL STATE OF MIND WAS REQUIRED FOR CONVICTION AS AN ACCOMPLICE (Not Raised Below).

IV. THE JURY INSTRUCTIONS ON CONSPIRACY TO MURDER WERE ERRONEOUS IN THAT THEY FAILED TO GIVE CONSPIRACY TO COMMIT ASSAULT AS A VIABLE OPTION, AND FAILED TO CONFINE CONSPIRACY TO MURDER TO INSTANCES WHERE THE DEFENDANT'S INTENT WAS TO *KILL,* NOT MERELY INJURE, THE VICTIM. (Not Raised Below).

V. THE SENTENCE FOR AGGRAVATED MANSLAUGHTER IS MANIFESTLY EXCESSIVE.

We conclude that the State presented sufficient evidence for the jury to find defendant guilty of purposeful or knowing murder. Consequently, the submission to the jury of this charge did not constitute "overcharging" which would require a reversal of defendant's conviction for aggravated manslaughter. We also conclude that even though the court's instructions regarding accomplice liability were deficient under the principles set forth in *State v. Bielkiewicz,* 267 *N.J.Super.* 520, 632 *A.*2d 277 (App.Div.1993), this

---

bility, for possession of a handgun without a permit, and that he was convicted of possession of hollow nose bullets, in violation of *N.J.S.A.* 2C:39–3f. Accordingly, the case must be remanded for entry of an amended judgment of conviction.

[3] Widemond filed a separate appeal from his convictions, in which we are also filing our opinion today. *State v. Widemond,* A–1772–94T4.

constituted harmless error because defendant was only convicted of the lesser included offense of aggravated manslaughter. We have no need to consider the arguments presented in Points IA and IV of defendant's brief relating to his conviction for conspiracy to commit murder, because this conviction was merged into defendant's conviction for aggravated manslaughter. The arguments presented under Points III and V of defendant's brief are clearly without merit and do not require discussion. *R.* 2:11-3(e)(2). Accordingly, we affirm defendant's convictions and sentence.

To place the issues relating to defendant's conviction for aggravated manslaughter in perspective, it is appropriate to briefly outline the State's evidence. Maurice Whitley testified that while he was driving his car in Newark around midnight on April 23, 1993, defendant and Martin waved for him to stop and asked for a ride. After they got into the car, defendant told Whitley that they were searching for someone who had just given him "fake money" for drugs. Shortly thereafter, they picked up Widemond and continued their search. At some point, defendant and Martin saw someone who looked like the person who had taken the drugs, and they told Whitley to stop the car. As defendant, Widemond and Martin were getting out of the car, Whitley saw a gun in the hand of one member of the group, whom he identified as Widemond in pretrial statements to the police. Widemond and Martin began running towards what Whitley characterized as "the graveyard," and defendant ran in another direction. Whitley then drove away and did not observe the killing. Two police officers on patrol heard the sound of four gunshots around the same time and in the same vicinity where Whitley let defendant, Widemond and Martin out of his car. Shortly thereafter, the officers apprehended defendant and Martin walking out of an alley near the graveyard. The officers subsequently found the victim's body in the alley. Another witness testified that he heard three shots outside his bedroom window, located near the alley, and that just before the third shot, he heard someone say, "shoot him." The State's theory of the case, as presented in the prosecutor's summation,

was that Widemond shot the victim and defendant acted as his accomplice.

I

■ Defendant argues that even though the State's evidence may have been sufficient to show that he intended, while acting as Widemond's accomplice, to cause serious bodily injury to the victim, "an accomplice must intend the principal to *kill* in order to commit murder," and that the State failed to present sufficient evidence to support a jury finding that he had an intent to kill. Defendant acknowledges that this argument is inconsistent with the statement in *Bielkiewicz* that an accomplice may be found guilty of murder if he "share[s] the principal's purpose to cause death *or serious bodily injury*," 267 *N.J.Super.* at 534, 632 *A.*2d 277 (emphasis added), but defendant characterizes this part of our opinion in *Bielkiewicz* as an "inadvertent" misstatement of the law "on an issue not critical to its overall holding." Defendant further argues that even though he was acquitted of purposeful or knowing murder, his conviction for the lesser included offense of aggravated manslaughter must be reversed, because the submission to the jury of a greater criminal charge for which there is insufficient evidence to support a finding of guilt exerts a coercive effect upon the jury to find the defendant guilty of a lesser included offense. *See State v. Christener,* 71 *N.J.* 55, 67–73, 362 *A.*2d 1153 (1976).

■ To establish a defendant's guilt of purposeful or knowing murder, the State must show that he "purposely" or "knowingly" caused "death or serious bodily injury resulting in death." *N.J.S.A.* 2C:11–3a(1),(2). Thus, the culpability element of murder is not limited to an intent to cause death but includes an intent to cause serious bodily injury. *See State v. Gerald,* 113 *N.J.* 40, 81–82, 549 *A.*2d 792 (1988).

However, defendant argues that the provision of the Code of Criminal Justice governing accomplice liability requires the State to prove that an alleged accomplice had the purpose of causing the

death of the victim. Defendant relies upon *N.J.S.A.* 2C:2–6c(1)(b), which provides:

> c. A person is an accomplice of another person in the commission of an offense if:
>
> (1) With the purpose of promoting or facilitating the commission of the offense; he:
>
> . . . .
>
> b. Aids or agrees or attempts to aid such other person in planning or committing it.

Defendant contends that the requirement that the State prove that an alleged accomplice "act[ed] with the purpose of promoting or facilitating the commission of the substantive offense for which he is charged as an accomplice," *State v. White*, 98 *N.J.* 122, 129, 484 *A.*2d 691 (1984), is analogous to the culpability requirement of attempted murder, as set forth in *State v. Rhett*, 127 *N.J.* 3, 7, 601 *A.*2d 689 (1992), which is a purpose "to cause the particular result that is the necessary element of the underlying offense—death."

 Defendant's argument fails to recognize the fundamental distinction between the mental intents required for the inchoate offense of an attempted murder and the completed offense of murder. *N.J.S.A.* 2C:5–1a(2) provides:

> a. Definition of attempt. A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
>
> . . . .
>
> (2) When causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing such result without further conduct on his part.[4]

Thus, to establish an attempt under this provision, the State must show that a defendant not only acted "with the kind of culpability otherwise required for the commission of the crime," but also acted or failed to act "with the purpose of causing" whatever "particular result is an element of the crime." Because the "particular result" that is an element of murder is "death," the

---

[4] Although *N.J.S.A.* 2C:5–1a(1) and (3) set forth other circumstances under which a person may be found guilty of a criminal attempt, the Court in *Rhett* did not cite these subsections and defendant's argument rests exclusively upon *Rhett*.

State must prove that a defendant had a purpose to cause death for the jury to find him guilty of attempted murder. *State v. Robinson,* 136 *N.J.* 476, 484–86, 643 *A.*2d 591 (1994); *State v. Rhett, supra.* In contrast, the culpability element of purposeful or knowing murder is "purposely" or "knowingly" causing "death *or serious bodily injury,*" *N.J.S.A.* 2C:11–3a(1)(2) (emphasis added), and to be found guilty as an accomplice, a person must act or fail to act "[w]ith the purpose of promoting or facilitating the commission of the offense." *N.J.S.A.* 2C:2–6c(1). Thus, even though murder in the role of an accomplice is, like attempted murder, "an intent crime," which requires the State to prove that the perpetrator acted "purposely" rather than only "knowingly," *see State v. Bielkiewicz, supra,* 267 *N.J.Super.* at 527–29, 632 *A.*2d 277 (accomplice liability for murder); *State v. Rhett, supra,* 127 *N.J.* at 7, 601 *A.*2d 689 (attempted murder), the "purpose" which the State must prove to convict a person of murder, whether as a principal or as an accomplice, is a purpose to cause either "death or serious bodily injury."

A hypothetical may help illustrate the distinction between the culpability elements of murder committed in the role of an accomplice and attempted murder. Suppose two mobsters are sent to break the knees of a gambler who has failed to pay his debts and one commits the assault while the other acts as a look out. If the assault causes the victim to die from shock, the person who actually committed the assault would be guilty as a principal of murder even though his purpose was solely to cause serious bodily injury. Moreover, under this hypothetical, the accomplice's purpose in facilitating the commission of the assault by acting as a look out would be identical to that of the principal. Therefore, the accomplice, like the principal, would be guilty of murder, even though his purpose was solely to cause "serious bodily injury," because his conduct contributed to causing the victim's "death." However, if the victim survived the attack, neither the principal nor the accomplice could be found guilty of attempted murder because they did not intend to cause death.

In this case, defendant enlisted Widemond, Martin and Whitley to help him find the victim. Defendant's stated purpose in locating the victim was to "hurt him," which the jury could reasonably have found meant to inflict serious bodily injury. Therefore, even though the State's evidence was insufficient for the jury to find that defendant was the shooter or that his intent was to kill the victim, it was sufficient to show that defendant, with the intent of inflicting serious bodily injury upon the victim, instigated and participated in the chase which resulted in his death. This was all the State had to show for defendant to be found guilty of murder in the role of an accomplice.

## II

Defendant also argues that his conviction for aggravated manslaughter must be reversed because the trial court failed to adequately instruct the jury regarding the principles of accomplice liability applicable to a jury's consideration of purposeful or knowing murder and the lesser included offenses of aggravated and reckless manslaughter. We summarized the requirements of such instructions in *Bielkiewicz*. "[A] jury must be instructed that to find a defendant guilty of a crime under a theory of accomplice liability, it must find that he 'shared in the intent which is the crime's basic element, and at least indirectly participated in the commission of the criminal act.'" 267 *N.J.Super.* at 528, 632 *A.*2d 277 (quoting *State v. Fair*, 45 *N.J.* 77, 95, 211 *A.*2d 359 (1965)). "In addition, when an alleged accomplice is charged with a different degree offense than the principal or lesser included offenses are submitted to the jury, the court has an obligation to 'carefully impart[ ] to the jury the distinctions between the specific intent required for the grades of the offense.'" *Ibid.* (quoting *State v. Weeks*, 107 *N.J.* 396, 410, 526 *A.*2d 1077 (1987)). Consequently, where an assault committed by multiple perpetrators results in the death of the victim and the case is submitted to the jury under a theory of accomplice liability, the jury should be informed that even if it concludes that "the principal ... committed purposeful

or knowing murder, the accomplice [can] be found guilty of a lesser offense involving recklessness if he intended that an assault be committed upon [the victim] but did not share the principal's intent that that assault cause death or serious bodily injury." *Id.* at 533, 632 A.2d 277.[5]

█ We agree with the defendant's contention that the trial court's instructions to the jury did not adequately explain these principles. The relevant parts of those instructions stated:

> One cannot be held to be an accomplice unless you find that he possessed the same criminal state of mind that is required to be proved against its person who actually committed the criminal act.
>
> In order to convict the defendant as an accomplice to the crime charged, you must find that the defendant had the purpose to participate in that particular crime. He must act with the purpose of promoting or facilitating the commission of the substantive offense with which he is charged.
>
> Now, when I say substantive offenses, I'm referring to the charges of murder, aggravated manslaughter and reckless manslaughter. It is not sufficient to prove only that the defendant had knowledge that a co-defendant was going to commit the crime charged or defendant knowingly facilitated the commission of it. It must prove not only that the defendant acted knowingly, but also that it was the defendant's conscious objective that the specific crime charged with be committed.
>
> In order to be convicted of murder, an accomplice not only knows that the principal was going to commit a knowing—in order to be convicted of murder, the accomplice had not only known that the principal was going to commit it, but also have to share the principal purpose to knowingly or purposely cause death or serious bodily injury resulting in death.
>
> An accomplice may be convicted of a lesser included offense of murder depending upon the state of mind with which you find that that defendant acted based upon the evidence that pertains to him.

Thus, although the trial court informed the jury that an accomplice may be found guilty of a lesser included offense if he did have the state of mind required for murder, the court did not instruct the jury that an accomplice may be found guilty of only aggravated or reckless manslaughter even though the principal or another accomplice is found guilty of murder. Therefore, if defendant had been found guilty of murder, we would be con-

---

[5] Model Jury Charges explaining these principles were approved on May 22, 1995. *Model Jury Charges (Criminal)*, § 2C:2–6 *Liability for Another's Conduct.*

strained to reverse his conviction. However, because defendant was only found guilty of the lesser included offense of aggravated manslaughter, we conclude that the inadequacy of the jury's instructions regarding accomplice liability constituted harmless error.

*Fair, Weeks,* and *Bielkiewicz* were all concerned with the adequacy of jury instructions regarding the state of mind required for a defendant to be found guilty as an accomplice, in particular the necessity of imparting to the jury that it can find that an accomplice acted with a less culpable state of mind than the principal. In this case, the jury acquitted defendant of the charge which involved the more culpable state of mind, namely murder, and only convicted him of aggravated manslaughter, which required the jury to find the less culpable state of mind of "recklessness," that is, that defendant "conscious[ly] disregard[ed] a substantial and unjustifiable risk" that death "will result from his conduct," which is a risk of "such a nature and degree that considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." *N.J.S.A.* 2C:2-2b(3). Defendant argues that the State had to prove a more culpable state of mind—what defense counsel referred to at oral argument as "super recklessness"—for defendant to be found guilty of aggravated manslaughter than would have been required to establish guilt of the lesser included offense of reckless manslaughter, and consequently the court should have instructed the jury that it could find Widemond guilty of aggravated manslaughter and defendant guilty of only reckless manslaughter based on their different states of mind. However, the distinction between aggravated and reckless manslaughter does not involve the defendant's state of mind but rather "the degree of risk that death will result from defendant's conduct." *State v. Curtis,* 195 *N.J.Super.* 354, 364, 479 *A.*2d 425 (App.Div.), *certif. denied,* 99 *N.J.* 212, 491 *A.*2d 708 (1984). The degree of risk required for aggravated manslaughter is a "probability" of death while reckless manslaughter

requires "a mere possibility of death." *Ibid.; accord State v. Breakiron,* 108 *N.J.* 591, 605, 532 *A.*2d 199 (1987). "These relevant 'circumstances' are objective and do not depend on defendant's state of mind." *State v. Curtis, supra,* 195 *N.J.Super.* at 364, 479 *A.*2d 425; ·see *State v. Grunow,* 102 *N.J.* 133, 143, 506 *A.*2d 708 (1986); *State v. Radziwil,* 235 *N.J.Super.* 557, 569, 563 *A.*2d 856 (App.Div.1989), *aff'd o.b.,* 121 *N.J.* 527, 582 *A.*2d 1003 (1990). Therefore, the inadequacy of the trial court's instructions regarding the state of mind required for defendant to be found guilty as an accomplice could not have affected the jury's decision to find defendant guilty of aggravated rather than reckless manslaughter and thus was harmless error.

Accordingly, defendant's convictions and sentence are affirmed. The case is remanded to the trial court for entry of an amended judgment of conviction in conformity with the sentencing transcript.