**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1682-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JUAN DEL ROSARIO,

    Defendant-Appellant.

_____

           Argued September 21, 2016 — Decided August 4, 2017

           Before Judges Fuentes, Simonelli and Carroll.

           On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 12-09-1328.

           Joshua Altman argued the cause for appellant (Benedict and Altman, attorneys; Mr. Altman and Steven D. Altman, on the brief).

           Nancy A. Hulett, Assistant Prosecutor, argued the cause for respondent (Andrew C. Carey, Middlesex County Prosecutor, attorney; Ms. Hulett, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant Juan Del Rosario and co-defendant Heidy V. Valdez were convicted of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count one); third-degree endangering an injured victim, N.J.S.A. 2C:12-1.2(a) (count two); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count three); fourth-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count four); and fourth-degree obstructing administration of law, N.J.S.A. 2C:29-1(b) (count five). The charges against defendant stemmed from his alleged involvement with Valdez in the assault of a security guard, who was struck in head with a baseball bat during a brawl in a nightclub parking lot. Defendant was prosecuted and convicted as an accomplice.

On appeal, defendant raises the following contentions:

> I. THE CONVICTIONS OF DEFENDANT ON COUNTS ONE, THREE AND FOUR MUST BE REVERSED BECAUSE THE JURY INSTRUCTIONS FAILED TO CLEARLY AND ACCURATELY INSTRUCT THE JURY ON THE LAW OF ACCOMPLICE LIABILITY AND THE [REQUIREMENT] OF A PURPOSEFUL STATE OF MIND. [Not Raised Below].

> A. THE CONVICTIONS FOR COUNTS ONE, THREE AND FOUR MUST BE REVERSED BECAUSE THE TRIAL COURT IMPROPERLY ARTICULATED THE LAW TO THE JURY AND LED TO CONVICTIONS OF OFFENSES FOR WHICH THE DEFENDANT WAS NOT CHARGED.

B. THE VERDICT SHEET PROVIDED TO THE JURY FURTHER CONFUSED THE JURY BECAUSE IT IGNORED THE CONCEPTS OF ACCOMPLICE LIABILITY AND INCORRECTLY DEFINED THE CULPABILITY REQUIREMENTS OF ACCOMPLICE LIABILITY REGARDING COUNTS ONE, THREE AND FOUR RELATIVE TO DEFENDANT.

II. THE COURT FAILED TO GIVE THE JURY INSTRUCTION THAT INTOXICATION IS A DEFENSE TO ALL OF THE COUNTS IN THE INDICTMENT. [Not Raised Below].

III. THE CONVICTION OF DEFENDANT SHOULD BE VACATED BECAUSE THE STATE IMPERMISSIBLY AND WITHOUT THE NECESSARY APPLICATION OR JURY INSTRUCTION INTRODUCED PROPENSITY EVIDENCE, IN VIOLATION OF N.J.R.E. 404(b). [Not Raised Below].

A. THE EVIDENCE OF UNCHARGED CONDUCT IS NOT ADMISSIBLE UNDER A [N.J.R.E. 404(b)] ANALYSIS. [Not Raised Below].

B. DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE THE JURY WAS NOT INSTRUCTED ON THE LIMITED PURPOSE FOR WHICH IT COULD CONSIDER THE [N.J.R.E. 404(b)] EVIDENCE. [Not Raised Below].

IV. THE LAY OPINION TESTIMONY OF LAW-ENFORCEMENT WITNESSES ABOUT WHAT THEY BELIEVED THEY SAW ON THE SURVEILLANCE VIDEO [DEPRIVED] DEFENDANT OF A FAIR TRIAL BY REPEATEDLY VIOLATING THE RULES OF EVIDENCE. [Not Raised Below].

A. THE OPINIONS OF THE LAW-ENFORCEMENT WITNESSES AS TO WHAT A SURVEILLANCE VIDEO SHOWED WAS IMPERMISSIBLY PRESENTED TO THE JURY VIOLATING [N.J.R.E.] 701 AND DEPRIVED THE DEFENDANT OF A FAIR TRIAL.

B. THE LAY OPINION TESTIMONY ROOTED IN HEARSAY AND LACKING ANY FOUNDATION OR

[PERSONAL] KNOWLEDGE CONSTITUTED PLAIN ERROR.

V. THE CONVICTIONS MUST BE REVERSED BECAUSE THE STATE COMMITTED PROSECUTORIAL [MIS]CONDUCT BY ASSERTING FACTS THAT WERE NOT IN EVIDENCE, RESULTING IN THE DENIAL OF A FAIR TRIAL TO DEFENDANT.

VI. DEFENDANT WAS DENIED A FAIR TRIAL WHEN HIS CUSTODIAL STATEMENT WAS PRESENTED TO THE JURY WITH INACCURATE TRANSLATION FROM SPANISH TO ENGLISH. [Not Raised Below].

VII. DEFENDANT SHOULD HAVE BEEN GRANTED A JUDGMENT OF ACQUITTAL ON COUNTS ONE, TWO, THREE AND FOUR. [Not Raised Below].

We affirm in part, reverse in part, and remand for a new trial.

I.

We derive the following facts from the record. On the evening of July 28, 2012, M.B.[1] was working as a security guard at a nightclub located on Route 35 in South Amboy. That evening, defendant and Valdez went to the nightclub with two or three women.

The nightclub had to be cleared by 2:00 a.m. At approximately 1:30 a.m., M.B. was stationed outside the club by the front doors, escorting patrons out of the nightclub. The front doors of the nightclub led to the parking lot. At approximately 1:40 a.m., two women began fighting on the stairs by the front doors. The fight

_____

[1] We use initials to identify the victim and witnesses in this matter in order to protect their privacy.

continued into the parking lot and became a "giant brawl" involving numerous individuals. M.B. saw people in the parking lot jumping on and kicking another security guard, W.H., and went to his aid. She attempted to get the crowd to disperse by telling them the police were called and everyone would be charged with driving while intoxicated unless they left. The next thing she recalled was waking up on the ground looking up. She tried to get up, but people told her to stay down because she had just been hit in the head with a bat. An ambulance eventually arrived and transported her to the hospital.

W.H. testified that he was in the parking lot when he saw the hatch of an SUV rise and "a bat come out where two gentlemen were standing behind." He went behind the men and grabbed the barrel of the bat. He struggled with them over the bat, and lost his grip when three or four other men pushed him against the SUV and threw punches at him. A few seconds later, he heard what sounded like someone getting hit with a bat and saw the bat on the ground. He did not actually see M.B. get hit, but saw her lying on the ground "basically unconscious" with blood all over her head. He grabbed the bat, threw it over a fence, and ran after the SUV as the driver, later identified as defendant, was attempting to exit the parking lot. A police officer who had arrived at the scene

saw W.H. running after the SUV, stopped the vehicle, and arrested defendant.

W.H. testified he had no interaction with defendant at any time on the evening of the attack; did not recall seeing defendant; and did not see the faces of the men struggling with him over the bat. Notably, W.H. never testified that defendant was one of the men he saw standing behind the SUV, or that he saw defendant take the bat from the SUV, hand it to Valdez or anyone else, or direct Valdez to strike someone.

Another security guard, R.G., testified he saw a man in a red shirt, later identified as Valdez, come out of an SUV with a baseball bat and "smash" the back of M.B.'s head and neck. A third security guard, J.R., testified he saw Valdez go to the back of an SUV, take out a baseball bat, start swinging, and strike M.B. in the head. These witnesses did not identify defendant as the person who struck M.B., and did not testify that they saw defendant with the bat or saw him give the bat to Valdez or anyone else to direct Valdez to strike someone.

There was surveillance video of the parking lot. It did not show M.B. getting struck with the bat, but showed activity around an SUV. The State sought to identify defendant as one of the individuals in the video through the testimony of Detective Matthew Barcheski and Sergeant Richard Wojaczyk. Neither officer was at

the scene at the time of the attack and they did not testify that they saw defendant at the scene or had any familiarity with his appearance. Nevertheless, Barcheski identified defendant on the video, testifying as follows:

> You'll see a person . . . I believe [defendant] to be approaching [the SUV]. He has a white shirt on. You'll see the taillights blink as [the SUV is] being unlocked. Then if you just watch the glass here, you'll see that actually the back tailgate comes up and someone reaching inside to grab an item.
>
> . . . .
>
> A person gets in the [SUV] that we believe to be [defendant] and drives off.
>
> . . . .
>
> From this angle you'll actually see [defendant] jumping into the fight and then he gets dragged off, then he jumps back over the guardrail to get back into that altercation.

Barcheski admitted that you could not actually see an item being pulled from the back of the SUV, and no one identified defendant as having the bat. He also admitted that nothing in his investigation led him to believe that defendant directed anyone to use the bat to strike someone.

Wojaczyk also identified defendant on the video, testifying as follows:

> [W]e could basically see the two suspects in this case, the two gentlemen that are sitting

over there, leaving the club, engaging in some fights out in front of the club, right at the front steps.

[Defendant] . . . [w]ent to the back of his vehicle. It appeared he took something out of the back of the vehicle. Shortly after that happened, [Valdez] struck the security officer with the bat in the back of the head.

Wojaczyk further testified he believed a security officer told him that he wrestled with defendant for a bat that was inside the SUV; however, he admitted he did not see any people struggling for possession of the bat on the video.

## II.

We first address defendant's contention in Point IV that Barcheski's and Wojaczyk's lay opinion testimony about what they saw on the surveillance video deprived him of a fair trial. Because defendant raised this contention for the first time on appeal, we review the issue under the plain error standard of review. R. 2:10-2; State v. Macon, 57 N.J. 325, 336 (1971). We will reverse on the basis of an unchallenged error only if it was "clearly capable of producing an unjust result." Macon, supra, 57 N.J. at 337. To reverse for plain error, we must determine that there is a real possibility that the error led to an unjust result, that is, "one sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not

have reached." Id. at 336. We conclude that the error asserted rises to the level of plain error.

"Lay witnesses may present relevant opinion testimony in accordance with Rule 701, which permits 'testimony in the form of opinions or inferences . . . if it . . . is rationally based' on the witness' 'perception' and 'will assist in understanding the witness' testimony or in determining a fact in issue.'" State v. Lazo, 209 N.J. 9, 22 (2012) (alterations in original) (quoting N.J.R.E. 701). In State v. McLean, 205 N.J. 438 (2011), the Court described the boundary line that separates factual testimony by police officers from permissible expert opinion testimony as follows:

> On one side of that line is fact testimony, through which an officer is permitted to set forth what he or she perceived through one or more of the senses. Fact testimony has always consisted of a description of what the officer did and saw, including, for example, that defendant stood on a corner, engaged in a brief conversation, looked around, reached into a bag, handed another person an item, accepted paper currency in exchange, threw the bag aside as the officer approached, and that the officer found drugs in the bag. Testimony of that type includes no opinion, lay or expert, and does not convey information about what the officer "believed," "thought" or "suspected," but instead is an ordinary fact-based recitation by a witness with first-hand knowledge.

> [Id. at 460 (emphasis added) (citations omitted).]

The Court explicitly rejected the argument "that there is a category of testimony that lies between [expert and lay opinions] that authorizes a police officer, after giving a factual recitation, to testify about a belief that the transaction he or she saw was a narcotics sale." Id. at 461. The Court reasoned that such an approach would "transform[] testimony about an individual's observation of a series of events . . . into an opportunity for police officers to offer opinions on defendants' guilt." Ibid.

The Court's explanation of why the testimony in McLean was impermissible resonates here:

> [T]he police officer in this matter was not qualified to testify as an expert. As a result, the reference in the question to his training and experience, coupled with the request that he testify about his belief as to what had happened, impermissibly asked for an expert opinion from a witness who had not been qualified to give one. . . . [A]s we made clear in [State v. Nesbitt, 185 N.J. 504, 514-16 (2006)], the implications of what he said he saw were not outside the common understanding of the jurors.
>
> [Id. at 461-62 (emphasis added).]

As the Court stated, expert or lay opinions are not "vehicle[s] for offering the view of the witness about a series of facts the jury can evaluate for itself[.]" Id. at 462.

Barcheski and Wojaczyk were offered as lay witnesses. Neither officer saw defendant at the scene or had knowledge of defendant's

appearance either prior to or at the time of the crime.  Their testimony that it was defendant seen in the video exceeded the bounds of permissible testimony.  This crossed the line from suspicion to fact, supported only by the officers' interpretation of the video based not on any personal knowledge, but only what they had observed on the video.  They were in no better position than the jury to interpret what was shown on the video.  Such baseless testimony unfairly prejudiced defendant without providing the jury any meaningful identifying information.  Viewing this error through the plain error lens, we find it was clearly capable of producing an unjust result.  R. 2:10-2; Macon, supra, 57 N.J. at 337.  Accordingly, we reverse and remand for a new trial.

Having reached this conclusion, we need not address defendant's contentions in Points III, V, and VII.  However, we address his contentions in Points I, II, and VI for the sake of completeness.

### III.

Defendant contends for the first time on appeal in Point I that the jury charge on accomplice liability was confusing and the verdict sheet further confused the jury because it did not include the words "accomplice liability."  We disagree.

Proper jury instructions are essential to a fair trial.  State v. Afanador, 151 N.J. 41, 54 (1997).  The court must give the jury

11

"a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." State v. Green, 86 N.J. 281, 287-88 (1981). The jury charge should include instruction on all "essential and fundamental issues and those dealing with substantially material points." Id. at 290. In assessing the propriety of the jury charge, we examine the entire charge to see whether it was ambiguous or misleading or whether it misinformed the jury of the law. State v. R.B., 183 N.J. 308, 324 (2005).

Although plain error applies to our review of the accomplice liability charge, we must assume that any defects in the charge, even in the absence of a timely objection, were immaterial. See State v. Jackmon, 305 N.J. Super. 274, 277-78 (App. Div. 1997), certif. denied, 153 N.J. 49 (1998) (stating that "[e]rroeous jury instructions on matters material to a jury's deliberations are ordinarily presumed to be reversible error"). Thus, in evaluating whether the alleged defect in the charge rises to the level of reversible error, we must consider the defects within the overall context of the charge as a whole. State v. Simon, 161 N.J. 416, 477 (1999). The alleged error must be "viewed in the totality of the entire charge, not in isolation." State v. Chapland, 187 N.J. 275, 289 (2006) (citation omitted). If, on reading the charge as a whole, prejudicial error does not appear, then the verdict must

stand.  State v. Coruzzi, 189 N.J. Super. 273, 312 (App. Div.), certif. denied, 94 N.J. 531 (1983).

Additionally, the "[u]se by the court of model jury charges is recommended as a method, albeit not perfect, for avoiding error."  Pressler & Verniero, Current N.J. Court Rules, comment 8.1 to R. 1:8-7 (2017).  At times "it may be necessary for the court to adapt the model jury charge to the facts in evidence, and failure to do so will constitute error."  Ibid.  However, a defendant is not entitled to have a jury charged in his or her own words.  State v. Piquerias, 344 N.J. Super. 297, 317 (App. Div. 2001), certif. denied, 171 N.J. 337 (2002).

If the State argues that the defendant acted as an accomplice, as the State did here, the trial court must "provide the jury with accurate and understandable jury instructions regarding accomplice liability even without a request by defense counsel."  State v. Maloney, 216 N.J. 91, 105 (2013) (quoting State v. Bielkiewicz, 267 N.J. Super. 520, 527 (App. Div. 1993)).  Further, if the alleged accomplice is charged with a different degree offense than the principal, or a lesser-included offense, the court must "carefully impart [] to the jury the distinctions between the specific intent required for the grades of the offense."  Id. at 106 (quoting Bielkiewicz, supra, 267 N.J. Super. at 528).

Here, the trial judge charged the jury on aggravated assault and its lesser included offenses and the weapons offenses. The judge instructed that the jury could find both defendants guilty of aggravated assault if the State proved beyond a reasonable doubt that their conduct was not only purposeful, but knowing or reckless. The judge then instructed on the weapons offenses, advising the jury they could find both defendants guilty even if they did not act with purpose.

While the judge should have segregated both defendants while charging the jury as to the general aggravated assault and weapons charges, she later clarified that defendant was alleged to be legally responsible for Valdez's actions under a theory of accomplice liability. The judge then gave the following instruction on accomplice liability:

> As you know, in this case the State alleges that [] defendant . . . is legally responsible for the criminal conduct of . . . Valdez, in violation of our law which reads, in part: "A person is guilty of an offense . . . if it is committed by his own conduct or the conduct of another person for which he is legally accountable or both."
>
> A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of an offense. A person is an accomplice of another person in the commission of an offense if, with the . . . purpose of promoting or facilitating the commission of the offense, he aids or agrees or attempts to aid such other person in planning or

committing it.  This provision of the law means that not only is a person who actually commits the criminal act responsible for it, but one who is legally accountable as an accomplice is also responsible.

Now, this responsibility as an accomplice may be equal and the same as the person who actually committed the crimes or there may be responsibility in a different degree depending upon the circumstances as you find them to be. So I'll further explain this distinction in a moment.  But in this case, the State alleges that [] defendant . . . is equally guilty of the crimes committed by . . . Valdez, because [defendant] acted as . . . Valdez's accomplice with the purpose that the specific crimes charged be committed.

In order to find defendant [] guilty of the specific crimes charged, the State must prove to you beyond a reasonable doubt that . . . Valdez committed the crimes of aggravated assault-unlawful possession of a weapon and possession of a weapon for an unlawful purpose.  I've already explained the elements of the charge of aggravated assault to you.  I will shortly explain the elements of the weapons offenses for you.

Secondly, the State has to prove that . . . defendant . . . did aid or agree or [] attempt to aid . . . Valdez in planning or committing the crimes, and that . . . defendant['s] purpose was to promote or facilitate the commission of . . . these crimes, and that . . . defendant . . . possessed the criminal state of mind that is required to prove against the person who actually committed the criminal acts, according to the State, . . . Valdez.

Remember, that one acts purposely with respect to his conduct or as a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a

15

result. "Aid" means to assist, support or supplement the efforts of another. "Agree to aid" means to encourage by promise of assistance or support. "Attempt to aid" means that a person takes substantial steps in a course of conduct designed to or planned to lend support or assistance in the efforts of another to cause the commission of the crime, meaning the aggravating assault, possession of a weapon [for an] unlawful purpose, unlawful possession of a weapon.

If you find that [] defendant . . . with the purpose of promoting or facilitating the commission of the offenses, aided or agreed or attempted to aid . . . Valdez in planning or committing the crimes, then you should consider him as if he committed the crimes himself. This accomplice statute should be considered separately as to each of the charges that I mentioned, which are the aggravated assault-unlawful possession of a weapon and possession of weapon for an unlawful purpose.

To prove [defendant's] criminal liability, the State does not have to prove his accomplice status by direct evidence or of a formal plan to commit the crimes. There does not have to be a verbal agreement by those that are charged. The proof may be circumstantial. Participation and agreement can be established from conduct as well as the spoken words. Mere presence at or near the scene does not make one a participant in the crime, nor does the failure of a spectator to interfere make him a participant in the crime.

It is, however, a circumstance to be considered by you with all the other evidence in determining whether . . . [defendant] was present as an accomplice. Presence is not in itself conclusive evidence of that fact. Whether presence has any probative value depends upon all of the circumstances. To constitute guilt, there must exist a community

16

of purpose and actual participation in the crime committed. While mere presence at the scene of the perpetration of a crime does not make a person a participant in it, proof that one is present at the scene of the commission of the crimes, without disproving or opposing it, is evidence[] from which, in connection with other circumstances, it is possible for the [j]ury to infer that he assented thereto, meaning agreed thereto, lent to his . . . countenance and approval and was thereby aiding in the crimes. It depends upon all of the circumstances as those circumstances appear to you from the evidence.

An accomplice may be convicted on the proof of the commission of a crime or of his complicity therein even though the person who it is claimed committed the crime has not been prosecuted or has been convicted of a different offense or degree of offense or has been acquitted. Remember, that . . . defendant . . . can be held to be an accomplice with equal responsibility only if you find as a fact that he possessed the criminal state of mind that is required to be proven against the person who actually committed the criminal acts, which the State alleges is . . . Valdez.

In order to convict [] defendant as an accomplice to the specific crimes charged, you must find that [] defendant . . . had the purpose to [participate] in the particular crime. He must have acted with the purpose of promoting or facilitating the commission of the crimes with which he is charged. It is not sufficient to prove only that [] defendant . . . had knowledge that another person was going to commit the crimes charged. The State must prove to you that it was [] defendant's conscious object that the specific conduct charge[d] be committed.

In sum, in order to find defendant . . . guilty of committing the crimes of aggravated assault-unlawful possession of a weapon and

17

possession of a weapon for unlawful purpose, the State must prove beyond a reasonable doubt that . . . Valdez committed the crimes that I just mentioned . . . that defendant . . . did . . . aid or agree or attempt to aid . . . Valdez in planning or committing the crimes, that defendant['s] . . . purpose was to promote or facilitate the commission of the crimes, and that defendant . . . possessed the criminal state of mind that is required to be proven against . . . Valdez, the person the State alleges who actually committed the criminal acts.

Remember, you are to consider the [accomplice] charge separately as to each of those charges. If you find that the State has proven each one of the elements that I just told you beyond a reasonable doubt, you must find [] defendant guilty of those charges, aggravated assault-unlawful possession of a weapon and possession of a weapon for an unlawful purpose. If, on the other hand, you find the State has failed to prove one or more of these elements beyond a reasonable doubt, you must find defendant . . . not guilty of those charges.

As I previously told you, your verdicts rendered must be unanimous, all [twelve] jurors must agree as to guilty or not guilty. Now, as I previously indicated, initially you will only consider whether [] defendant . . . should be found not guilty or guilty of acting as an accomplice of . . . Valdez with full and equal responsibility for the specific crimes charged. If you find [] defendant . . . guilty of the specific charge, then you need not go on to any of these lesser included charges, and that has to do with the aggravated assault-serious bodily injury.

If, however, you find [] defendant . . . not guilty of acting as an accomplice to . . . Valdez on the specific crime charge of aggravated assault-serious bodily injury,

18

then you will go on to consider whether he acted as an accomplice with the purpose of promoting or facilitating the commission of one of the lesser included offenses rather than the actual crime.

And our law recognizes that two or more people may participate in the commission of an offense, but each may participate therein with a different state of mind. The liability or responsibility of each participant for any offense is dependent on his own state of mind and not on anyone else's. So guided by these legal principles, if you have found [] defendant . . . not guilty of the aggravated assault-serious bodily injury, you will then consider whether he is an accomplice on the lesser charge, which I've gone over with you, aggravated assault-significant bodily injury, or if you find him not guilty of that charge, you'll go on to aggravated assault-bodily injury with a deadly weapon. If you find him not guilty of that charge, you will go on to simple assault.

Therefore in order to find defendant . . . guilty of the lesser included offenses, the State must prove to you beyond a reasonable doubt that . . . Valdez committed the crimes of aggravated assault alleged in the indictment or the lesser included offense of aggravated assault-significant bodily injury, aggravated assault-bodily injury with a deadly weapon, or simple assault; that defendant . . . did aid or agree or attempt to aid . . . Valdez in planning or committing the aggravated assault, the planning to commit the aggravated assault-significant bodily injury, aggravated assault-bodily injury with a deadly weapon or simple assault; that defendant['s] . . . purpose was to promote or facilitate the commission of either aggravated assault-significant bodily injury, aggravated assault bodily injury with a deadly weapon or simple assault. Again, these are the possible lesser included offenses; that defendant

19

> . . . possessed the criminal state of mind
> that is required for the commission of those
> lesser included offenses.
>
> If you find that the State has proven
> each one of these elements beyond a reasonable
> doubt, you must find defendant . . . guilty.
> If, on the other hand, you find the State has
> failed to prove one or more of these elements
> beyond a reasonable doubt, you must find []
> defendant . . . not guilty. As I previously
> indicated, your verdicts must be unanimous,
> all [twelve] jurors must agree.

A jury must be instructed that to find the defendant guilty as an accomplice, it must find he shared in the intent which is the crime's basic element and that the defendant at least indirectly participated in commission of the crime. State v. Savage, 172 N.J. 374, 388 (2002). N.J.S.A. 2C:2-6(c) requires shared intent:

> A person is an accomplice of another
> person in the commission of an offense if: (1)
> With the purpose of promoting or facilitating
> the commission of the offense; he (a) Solicits
> such other person to commit it; [or] (b) Aids
> or agrees or attempts to aid such other person
> in planning or committing it[.]

If the court charges the jury on lesser-included offenses, it must instruct that the defendant can be found guilty as an accomplice of a lesser-included offense. Bielkiewicz, supra, 267 N.J. Super. at 528. Thus, the liability of each defendant is dependent on his own state of mind. State v. Harrington, 310 N.J. Super. 272, 278 (App. Div.), certif. denied, 156 N.J. 387 (1998).

There was no error, let alone plain error, in the accomplice liability charge given in this case. The charge mirrors New Jersey Model Jury Charges, (Criminal), Complicity, N.J.S.A. 2C:2-6 (1995), and adequately informed the jury as to the mental states necessary to convict defendant as an accomplice to the indictable charges, as well as the lesser-included offenses. Thus, even though the judge initially included defendant in the general aggravated assault and weapons charge, she later clarified that he could only be charged as an accomplice if he purposefully facilitated the commission of the offenses. Considering the mistake within the context of the charge as a whole, it did not amount to reversible error. See Simon, supra, 161 N.J. at 477.

Additionally, we find no reversible error in the failure of the verdict sheet to specify that defendant was only being charged as an accomplice. "A person is guilty of an offense if it is committed . . . by the conduct of another person for which he is legally accountable[.]" N.J.S.A. 2C:2-6(a). Thus, even though charged as an accomplice, defendant is essentially guilty of the same offense as his co-defendant. The omission of the words "accomplice liability" on the verdict sheet is irrelevant. Even if the omission was an error, we consider the defects within the overall context of the charge as a whole. See Simon, supra, 161 N.J. at 477. Since the judge properly charged the jury on

21                                                                    A-1682-14T3

accomplice liability prior to distributing the verdict sheet, there was no plain error "clearly capable of producing an unjust result."  R. 2:10-2.

IV.

Defendant contends for the first time on appeal in Point II that the court should have sua sponte charged the jury on the voluntary intoxication defense.  This contention lacks merit.

Voluntary intoxication is a valid defense if it negates an element of the offense charged.  N.J.S.A. 2C:2-8(a); State v. Johnson, 309 N.J. Super. 237, 266 (App. Div.), certif. denied, 156 N.J. 387 (1998).  Thus, it is a defense to a purposeful or knowing crime, but not recklessness or negligence.  State v. Mauricio, 117 N.J. 402, 418 (1990).  "[T]he intoxication must be of an extremely high level."  State v. Cameron, 104 N.J. 42, 54 (1986).  Thus, to warrant a voluntary intoxication charge, there must be a "rational basis for the conclusion that defendant's faculties were so prostrated that he or she was incapable of forming" the requisite mental state.  Mauricio, supra, 117 N.J. at 418-19.  Factors pertinent in this determination include: (1) "the quantity of intoxicant consumed," (2) "the period of time involved," (3) "the defendant's ability to recall significant events" and (4) "his conduct as perceived by others."  Johnson, supra, 309 N.J. Super. at 266 (citation omitted).

Here, there was no evidence demonstrating that defendant was so intoxicated he could not form a purposeful and knowing intention to commit the crimes. The only evidence defendant points to in favor of an intoxication defense is: R.G.'s testimony that the people coming out of the nightclub were "pretty drunk;" defendant's statement to Barcheski that he drank champagne; and Barcheski's testimony that Valdez was "probably still feeling good" and defendant and Valdez were "popping bottles." Most of this evidence did not relate directly to defendant's intoxication; rather, it related to Valdez's or other patrons' intoxication. Moreover, there was no evidence of defendant's blood-alcohol content or the amount of alcohol he actually consumed or over what period of time he consumed it, and no one testified that he smelled of alcohol or was perceived to be intoxicated. Accordingly, an involuntary intoxication charge was not warranted.

V.

Following defendant's arrest, Barcheski obtained a videotaped statement from defendant. Defendant speaks Spanish, but not English. Barcheski had a Spanish-speaking police officer translate between English and Spanish during defendant's questioning. Defendant said that he drove with a friend to the nightclub in his SUV; someone spilled a drink on one of the females, which started an altercation; and the altercation

23

continued in the parking lot and escalated when a security guard directed everyone to go home. Defendant said he used a remote control device to open the back hatch of his SUV to change a fuse; someone in the crowd grabbed a wooden baseball bat from inside his SUV; and he did not remember or know who took the bat out of the SUV. He also said he did not witness what happened with the bat, and did not know what happened to Valdez at the end of the night.

At trial, defendant objected to the playing of his videotaped statement to the jury, arguing, as he does on appeal, that the translating officer was not a certified interpreter and did not accurately interpret his statements. The judge observed that defense counsel, who was fluent in Spanish, had been representing defendant since 2012, watched the video with defendant, and took no issue with the statement prior to trial. In addition, defense counsel conceded he did not see any discrepancies in the translation and the translation captured the essence of what defendant said. Further, the court offered defense counsel an opportunity to review the videotaped statement and correct any discrepancies or have the translation examined, but counsel declined both offers. The videotaped statement was played to the jury, and the jurors were provided a transcript that was prepared by a bilingual stenographer employed by the Prosecutor's Office.

Defendant cannot take one position at trial and then take a different position on appeal. Mistakes at trial are subject to the invited-error doctrine. State v. A.R., 213 N.J. 542, 561 (2013). Under the doctrine, trial errors that "were induced, encouraged[,] or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal." Ibid. (quoting State v. Corsaro, 107 N.J. 339, 345 (1987)). In other words, if a party has invited the error, he is barred from raising an objection for the first time on appeal. Ibid. (citation omitted).

"The doctrine acknowledges the common-sense notion that a 'disappointed litigant' cannot argue on appeal that a prior ruling was erroneous 'when that party urged the lower court to adopt the proposition now alleged to be error.'" Ibid. (quoting N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 340 (2010)). "That principle is grounded in considerations of fairness, and is meant to prevent defendants from manipulating the system." Ibid. (citations omitted). "The doctrine is implicated when a defendant in some way has led the court into error, and it has been applied in a wide variety of situations." Id. at 562 (citations omitted). Even if a party had invited error, courts will not bar the defendant from raising an issue on appeal if "the particular error . . . cut morally into the substantive rights of the defendant[.]" Ibid. (quoting Corsaro, supra, 107 N.J. at 345). If the doctrine

25

A-1682-14T3

would "'cause a fundamental miscarriage of justice,' it will not be applied automatically."  Ibid. (quoting M.C. III, supra, 201 N.J. at 342).

By withdrawing the objection to admission of his videotaped statement, defendant "induced, encouraged[,] acquiesced in or consented to" the admission of his videotaped statement.  A.R., supra, 213 N.J. at 561.  Accordingly, the invited error doctrine applies here.  In any event, the alleged discrepancies on which defendant now relies were not of such significance that they produced an unjust result.

Affirmed in part, reversed in part, and remanded for a new trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1682-14T3